## Wytheville.

### J. P. CHANDLER v. PENINSULA LIGHT AND POWER COMPANY, INC., AND TOWN OF ONANCOCK.

March 21, 1929.

The opinion states the case.

*Mapp & Mapp* and *Herbert Barnes*, for the plaintiff in error.

*Warner Ames, Gunter & Gunter*, and *Stewart K. Powell*, for the defendants in error.

WEST, J., delivered the opinion of the court.

On August 2, 1926, J. P. Chandler, while riding along the main street in Onancock, on the top of a loaded automobile truck, came in contact with an electric light wire which extended across the street twelve or thirteen feet above the ground. He was thrown from the truck and seriously injured. He instituted this suit against the Peninsula Light and Power Company, Inc., and the town of Onancock, to recover damages for the injuries sustained.

The declaration alleges that the power company failed to maintain its wires at the height required by

law, to-wit: "Not less than twenty feet above all road crossings;" that the town of Onancock failed to keep its said street in reasonably good order and free from obstruction; and that the town of Onancock and the Light and Power Company entered into a contract for the installing of a street lighting system in the town, and it was the duty of the power company to "erect and maintain its wires at all points where they crossed the streets of said town at a height of not less than twenty feet above the streets of said town."

Defendants demurred to plaintiff's declaration on the ground that it does not show that the accident occurred at a road crossing within the meaning of section 4038 of the Code of Virginia, 1924.

It is conceded that the accident occurred one hundred and fifty yards east from the nearest road crossing, or intersection.

The court sustained the defendant's demurrer to plaintiff's declaration and dismissed the suit at his cost. To that judgment this writ of error was allowed.

It is agreed by both plaintiff and defendants that the only question to be decided in the case is, whether the following portion of section 4038 of the Code applies to the facts in the instant case, to-wit: "All wires fastened upon posts or poles, erected as aforesaid, shall be placed at the height of not less than twenty feet above all road crossings."

The defendants contend that the language just quoted applies only at road crossings, or intersections, while the plaintiff contends that the wires of the defendant company, under that section, were required to be erected and kept twenty feet above the road at every point where the wire crossed the road or street.

■ In construing an act of the General Assembly, the courts should endeavor to ascertain its meaning from the words used, which must be given their "usual and ordinary signification."

■ The ordinary meaning of "road crossing" is a place where roads cross or intersect, and not a place where a wire crosses a road. Had the legislature so intended, it could, and doubtless would, have provided that all wires should be placed at a height of not less than twenty feet above the road, wherever the wire crossed the road.

If, as the statute says, the wire must be placed twenty feet above the road crossing, it necessarily follows that the *road crossing* must be in existence before the wire is strung across the road, and that the presence of the wire is not necessary to make a road crossing.

■ Where the language used is clear but is not as broad as it might have been, the court cannot give to the words used a new meaning in order to make them include that which the letter of the law excludes.

In *Saville, Clerk*, v. *Virginia Railway & Power Co.*, 114 Va. 444, 76 S. E. 954, speaking through Keith, P., the court said: "It is contended that the construction insisted upon by the plaintiff in error is violative of the spirit and reason of the law. The argument would seem to concede that the contention is within the letter of the law. We hear a great deal about the spirit of the law, but the duty of this court is not to make law, but to construe it; not to wrest its letter from its plain meaning in order to conform to what is conceived to be its spirit, in order to subserve and promote some principle of justice and equality which it is claimed the letter of the law has violated. It is our duty to take the words which the legislature has seen fit to employ and give to them their usual and ordinary signification,

and having thus ascertained the legislative intent, to give effect to it, unless it transcends the legislative power as limited by the Constitution."

In *Mapp* v. *Holland*, 138 Va. 524, 122 S. E. 431, the court in effect defines a road crossing to be a place where one road crosses or intersects another. This language is used: "Are the roads above mentioned (which merely made a junction, the one with the other, and did not constitute *a road crossing*, or a *cross-roads*, as commonly spoken of) intersecting roads within the meaning of sub-section (d) of the Rules and Regulation of Traffic, mentioned in the statement preceding this opinion?" (Italics ours.)

In *Postal Cable Co.* v. *N. & W. R. R. Co.*, 88 Va. 925, 14 S. E. 805, the law is stated thus: "And the popular, received import of words furnishes the general rule for the interpretation of public laws, as well as of private and social transactions; and, wherever the legislature adopts such language in order to define and promulge their action or their will, the just conclusion from such a course must be that they not only themselves comprehended the meaning of the language they have selected, but have chosen it with reference to the known apprehension of those to whom the legislative language is addressed, and for whom it is designed to constitute a rule of conduct—namely, the community at large."

■ Code, sections 4035 and 4038, inclusive, are *in pari materia* and must be read and construed together. Section 4035 contains the following provision: "* * but such poles, wires, cables and conduits shall not in any wise obstruct or interfere with public travel, or the ordinary use of such railroads, parks, roads, works, turnpikes, streets, avenues, alleys or waters."

The language just quoted from section 4035 regulates the erection of poles and wires, generally, in the public

roads of the State, while section 4038 alone provides the height which the wires shall be placed above all *road crossings.*

In *Knott* v. *Pepper*, 74 Mont. 244, 239 Pac. 1040, the Supreme Court of Montana quotes with approval the Standard Dictionary's definition of "crossing," as "a place where two roads cross on a level; particularly where one of them is a railway." The court further says: "But even if used in the statute to refer to the intersection of two highways, those highways must be some sort of established roads."

"The courts cannot by construction supply a *casus omissus* by giving force and effect to the language of the statute when applied to a subject about which nothing whatever is said, and which to all appearances was not in the minds of the legislature at the time of the enactment of the law. No mere omission, no mere failure to provide for contingencies, which it may seem wise to have provided for specifically, justify any judicial addition to the language of the statute. It is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace cases because no good reason can be assigned why they were excluded from its provisions." 25 R. C. L., page 974.

The plaintiff relies on *Weaver* v. *Dawson County Mutual Telephone Co.*, 82 Neb. 696, 118 N. W. 650, 22 L. R. A. (N. S.) 1190. This case can be differentiated from the case at bar. It is true the Nebraska and Virginia statutes are very similar, each providing that the wires shall be placed at the height of not less than twenty feet above all road crossings. In the *Weaver Case*, as fairly appears from opinion and record, the accident occurred at the intersection of a much used private road with a public road, and the court held

that the words, "all road crossings," as used in the statute, referred to both private roads in general use and public roads, and that the statute applied to that case. In the instant case, the accident occurred one hundred and fifty yards from the nearest road crossing, either public or private, and for that reason the statute regulating the height of the wires at a road crossing does not apply to the case at bar.

We find no error in the orders complained of and the same will be affirmed.

*Affirmed.*